UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NOAH D. OWENS,

       Plaintiff,

          v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

       Defendant.

Civil No. 06-757-HA

OPINION AND ORDER

———————————————————

HAGGERTY, Chief Judge:

       Plaintiff Noah D. Owens brought this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the Act). Plaintiff requests review of a final decision by the Commissioner of the Social Security Administration (SSA) denying his application for Social Security Disability Insurance benefits (DIB). He seeks an order reversing the Commissioner's decision and remanding his case for an award of benefits.

———————————————

1  On February 12, 2007, Michael J. Astrue became Commissioner of Social Security and he is substituted in these proceedings as such. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25 (d)(1).

1 -- OPINION AND ORDER

This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). After reviewing the record of this case and evaluating counsel's arguments fully, this court concludes that the Commissioner's decision must be reversed and remanded for an immediate calculation and award of benefits.

## FACTUAL BACKGROUND

Both parties accept the Administrative Law Judge's (ALJ) statement of facts, with plaintiff noting certain exceptions. Pl.'s Opening Brief at 2; Deft.'s Brief in Response at 3. Accordingly, this court accepts the factual background presented, and will address plaintiff's exceptions and relevant details of his medical history as necessary in this ruling.

## ADMINISTRATIVE HISTORY

Plaintiff applied for DIB protectively on June 25, 2003, alleging a disability onset date of January 31, 1999. Tr. of Admin. R. (hereinafter, Tr.) 11, 41. Plaintiff alleged he became unable to work on January 31, 1999, due to narcolepsy and lack of movement in his left leg. Tr. 55. His application was denied initially and upon reconsideration. Tr. 11, 18, 23. Plaintiff was granted a hearing at which he was represented by counsel. Testimony was given by plaintiff and by a vocational expert (VE) called by the ALJ.

The ALJ issued a decision on September 22, 2005, denying plaintiff's application for DIB. Tr. 11-15. The Appeals Council denied plaintiff's request for review. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

Plaintiff subsequently filed a Complaint seeking this court's judicial review. The first two sentences of Section 405(g) provide that any individual may obtain a review of a final decision of

the Commissioner of Social Security made after a hearing to which the individual was a party, irrespective of the amount in controversy. This review is obtained in the district court of the United States for the judicial district in which the plaintiff resides.

## STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing

of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

4 -- OPINION AND ORDER

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since his alleged disability onset date. Tr. 14, Finding 1.

At step two, the ALJ found that plaintiff had "status post left ankle fracture with subsequent surgery," which was considered severe.  Tr. 13; *see also* Tr. 15, Finding 2.

At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment.  Tr. 15, Finding 2.  The ALJ determined that plaintiff had the RFC for a full range of medium exertion work with no exertional or non-exertional limitations.  Tr. 14; *see also* Tr. 15, Finding 4.

At step four, the ALJ found that plaintiff was able to perform his past relevant work.  Tr. 15, Finding 5.

## QUESTION PRESENTED

Plaintiff argues that the ALJ erred by: (1) failing to accept plaintiff's narcolepsy as a medically determinable impairment; (2) rejecting Dr. Eric Dover's concurrent diagnoses and conclusions; (3)failing to provide persuasive, specific, valid reasons that are supported by the record for discounting the disability rating given to plaintiff by the Veterans' Administration (VA); and (4) rejecting lay testimony improperly.  As a result of these errors, plaintiff seeks an order reversing the Commissioner's decision and remanding for an award of benefits.  Because this court determines that the ALJ erred in analyzing plaintiff's existing disability and the medical opinions and VA ratings presented in the record, further analysis regarding plaintiff's other challenges need not be reached.

## ANALYSIS

### 1.    Plaintiff's Existing Disability

The VA has rated plaintiff as sixty-percent disabled due to narcolepsy.  Tr. 198-201.  This was acknowledged by the ALJ in his ruling.  Tr. 12 ("Incredibly, without any objective evidence

the VA rated the claimant as 60 percent disabled due to narcolepsy (Exhibit 1F/2F)"). Plainly,
the ALJ disputed the VA's determination vehemently. The ALJ described the VA's disability
rating of plaintiff as "incredible" a second time in his decision when he wrote "*Incredibly*, no
sleep study had been undertaken during this [VA] rating evaluation." *Id.* (emphasis added). The
ALJ also *twice* "strongly" urged the VA to re-evaluate plaintiff's disability rating. Tr. 13 ("it is
strongly recommended the VA actually have the claimant evaluated for nacolepsy"); Tr. 15
("Further, the VA is strongly urged to actually evaluate the claimant for narcolepsy instead of just
accepting his subjective complaints as medical facts, and to re-evaluate his award of [VA]
benefits").

The Ninth Circuit has addressed how VA ratings should be regarded by an ALJ:

> We agree with all of the other circuits that have considered
> the question and hold that although a VA rating of disability does
> not necessarily compel the SSA to reach an identical result, 20
> C.F.R. § 404.1504, the ALJ must * * * ordinarily give great
> weight to a VA determination of disability.

*McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citations omitted); *see also*
*Cushman v. Social Sec. Admin.*, 175 Fed. Appx. 861, 862 (9th Cir. 2006) (although a VA
disability rating does not necessarily compel the Social Security Administration to reach the same
result, such rating must be given great weight); *Alexy v. Barnhart*, 58 Fed. Appx. 357, 358 (9th
Cir. 2003) (citations omitted) (the ALJ must fully and fairly develop the record and incorporate
any reports from a VA hospital finding the claimant to be disabled, which must be considered
and given great weight).

The *McCartey* court provided a compelling analysis in support of this conclusion:

7 -- OPINION AND ORDER

> We so conclude [that VA determinations are to be given great weight] because of the marked similarity between these two federal disability programs. Both programs serve the same governmental purpose – providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

*McCartey*, 298 F.3d at 1076.

The *McCartey* court did, however, instruct on when an ALJ may give less weight to a VA disability rating: after giving "persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (acknowledging that "the VA and SSA criteria for determining disability are not identical, however").

As is made clear by the repeated suggestions that the VA reconsider its disability rating of plaintiff, the ALJ's ruling focused upon critiquing his perceptions of the VA's evaluative process. Tr. 13, 15. Such a focus disregarded the *McCartey* court's teaching that the VA program has a "detailed regulatory scheme," requires "claimants to present extensive medical documentation in support of their claims," and insists upon "criteria for evaluating disability [that] are very specific and translate easily into SSA's disability framework." *McCartey*, 298 F.3d at 1076. The only reason given by the ALJ for rejecting the VA's finding of disability was the ALJ's apparent belief that there never has been "any examination, evaluations, or objective testing to actually confirm [plaintiff's narcolepsy]. The VA simply accepted the claimant's self-report of such a condition

and then decided to award him benefits based on the alleged condition without any confirmation of the existence of this condition." Tr. 13.

While the record here does consist of some abbreviated military medical notations and summaries, the ALJ's criticism of the VA evaluative process is neither persuasive nor valid. The record establishes that the VA's determination was supported by objective and extensive medical examinations.

A "Chronological Record of Medical Care" confirms that plaintiff sought treatment for "lack of sleep" as early as 1996. Tr. 236.

Plaintiff also reported to military physicians on October 8, 1997 that he had been suffering from a sleep disturbance pattern for about three weeks. Tr. 220. A clinical examination was conducted on November 6, 1997 and plaintiff's medical history was reviewed. Tr. 215-219, 234. A neurological examination was undertaken. Tr. 223. Blood tests, a urinalysis and a chest x-ray were also administered. Tr. 216, 225-27. Plaintiff was sent subsequently for a mental health examination. Tr. 228. The drug Serazone (Tr. 210) or Serzone (Tr. 205, 251-52) was prescribed by military doctors and plaintiff suffered adverse effects.

The VA letter advising plaintiff of its disability rating was accompanied by a copy of the VA's "Rating Decision," which provided "a detailed explanation of [the VA] decision, the evidence considered, and the reasons for our decision." Tr. 198, referencing Tr. 202-09. This documentation detailed the basis for the VA rating (Tr. 203); an examination record acknowledging and confirming plaintiff's diagnosis of narcolepsy in 1997 (Tr. 205-06, examination date of February 1, 2001); and a record of an examination on January 28, 1999 discussing and diagnosing plaintiff's sleep disorder (Tr. 207-09).

9 -- OPINION AND ORDER

Undeniably, as a result of this testing, military medical personnel diagnosed narcolepsy. The ALJ's ruling erred by ignoring the record of this testing and instead suggesting incorrectly that the diagnosis of narcolepsy by military doctors was based solely on the plaintiff's descriptions of his subjective symptoms. Tr. 13 ("The VA simply accepted the claimant's self-report"). Specifically, the ALJ criticized the VA for determining that plaintiff was disabled even though "no sleep study had been undertaken" during the VA's evaluation. Tr. 12. While it is true that no sleep study was conducted, this was acknowledged by the VA and disclosed in the documents that were included as support for the VA's disability rating of plaintiff. Tr. 205.

The ALJ's decision to disregard the VA's determination and instead suggest additional VA medical tests is error. This posture fails to give "great weight" to the VA disability evaluation and fails to provide "persuasive, specific, valid reasons" for rejecting a VA determination. *McCartey*, 298 F.3d at 1076. Secondarily, rejecting plaintiff's DIB application because of apparent frustration with the scope of the VA disability rating process could be viewed is an abdication of the ALJ's duty to fully and fairly develop the record and to "incorporate" any reports from a VA hospital finding the claimant to be disabled. *See Alexy*, 58 Fed. Appx. at 357 (citations omitted).

### 2.    Dr. Eric Dover's concurrent diagnoses and conclusions

The ALJ also erred in rejecting Dr. Eric Dover's diagnoses and conclusions. Doctor Dover reviewed plaintiff's medical record, which included updated laboratory tests and an electrocardiogram. He described plaintiff as having been "evaluated thoroughly," and opined about a possible connection between plaintiff's experiences in the military, which exposed

10 -- OPINION AND ORDER

plaintiff to biological agents, and his narcolepsy. Tr. 210. Doctor Dover stated his expert

opinion that plaintiff "is unable to maintain a job because of the fact that he is unable to maintain

wakefullness during the working hours. In particular, he may fall asleep for fifteen minutes to

two hours multiple times a day. The times he may fall asleep are unpredictable." *Id.*

The ALJ rejected this opinion ("accorded it little weight") after noting that Dr. Dover's

examination was "at the behest of claimant's attorney" and complaining that it was unclear upon

which medical records the doctor had relied for his conclusions. Tr. 12. The ALJ then dismissed

plaintiff's sleep disorder evidence as nothing more than that plaintiff "simply reported daytime

sleepiness in December 1997," and reiterated his disdain for the fact that plaintiff "was assigned

the diagnosis of narcolepsy based entirely on his subjective complaints." Tr. 13.

As established above, this is an inaccurate characterization of plaintiff's VA-determined

disability. The ALJ's views to the contrary provide insufficient grounds for according Dr.

Dover's opinions "little weight."

The SSA's implementing regulations distinguish among the opinions of three types of

physicians: 1) those who treat the claimant; 2) those who examine, but do not treat; and 3) those

who neither examine nor treat. 20 C.F.R. § 404.1527(d); *see also Holohan v. Massanari*, 246

F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

An ALJ must provide clear and convincing reasons for rejecting uncontroverted expert

opinions, and must provide specific, legitimate reasons for rejecting controverted expert

opinions. *Lester*, 81 F.3d at 830-32; *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

1988) (clear and convincing reasons must be provided to support rejection of a treating

physician's ultimate conclusions).

Generally, a treating physician's opinion may carry more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a reviewing physician's conclusions. *Holohan*, 246 F.3d at 1202; *Lester*, 81 F.3d at 830. Throughout these standards regarding the distinctions made between medical opinions, there is no basis for discrediting a doctor's conclusions as entitled to "little weight" because that doctor was an examining physician and not a treating physician. Similarly, there is no basis for construing a physician's ability to evaluate a claimant as limited solely because the physician is an examining physician, retained "at the behest" of a claimant's attorney.

The ALJ also appeared to devalue Dr. Dover's opinions because his views were based largely upon plaintiff's "self-reporting." Tr. 12-13. It is appropriate to discount medical opinions to the extent that the opinions are based on a claimant's self-reporting. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). However, nothing in the record suggests that Dr. Dover's expert opinion of plaintiff's impairments was based exclusively or even largely upon plaintiff's self-reporting. To the contrary, the evidence presented establishes that Dr. Dover grounded his opinions upon the scrutiny of objective healthcare records. Tr. 210. The doctor's evaluations were derived from objective medical findings, including formal testing, as well as from appropriate reliance upon his patient's reporting.

This court concludes that the rationalizations presented for rejecting Dr. Dover's opinions fall short of either the exacting standard for rejecting uncontroverted opinions (requiring clear and convincing reasons), or controverted expert opinion (requiring specific, legitimate reasons).

When the Commissioner provides inadequate reasons for rejecting the opinions of a treating or examining physician, those opinions are generally credited as true as a matter of law. *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (citations omitted)*; see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). These errors regarding the medical opinions presented, coupled with the failure to fully credit the VA disability determination, compel remand of this action. Because it is clear from the record that, accepting this evidence as true, the ALJ would be required to find plaintiff entitled to DIB, the remand shall compel the SSA to calculate and award benefits. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). Accordingly, this court need not reach plaintiff's additional challenges regarding the ALJ's analysis of lay testimony presented on behalf of plaintiff.

### 3.  Remand

As a result of the inadequate rejection of medical evidence and the inadequate explanation for rejecting the VA disability rating, this court concludes that a remand is appropriate in this matter. While, as noted above, the first two sentences of Section 405(g) establish this court's jurisdiction, the fourth and sixth sentences of Section 405(g) set forth the exclusive methods by which district courts may remand an action to the Commissioner. *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to

deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. §
405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)). A plaintiff who
obtains a sentence four remand is considered a prevailing party for purposes of attorney fees even
when the case has been remanded for further administrative action. *Id.* (citing *Schaefer*, 509 U.S.
at 297-302).

Conversely, remands ordered pursuant to sentence six of Section 405(g) "may be ordered
in only two situations: where the Commissioner requests a remand before answering the
complaint, or where new, material evidence is adduced that was for good cause not presented
before the agency." *Akopyan*, 296 F.3d at 854-55 (citing *Schaefer*, 509 U.S. at 297 n. 2). Unlike
sentence four remands, sentence six remands do not constitute final judgments. *Id.*

The issues presented in this action compel a remand under sentence four. Whether to
remand under sentence four for an award of benefits, or for further proceedings, is a matter of
judicial discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000).

A remand for further proceedings is unnecessary if the record is fully developed and it is
clear from the record that the ALJ would be required to award benefits. *Holohan*, 246 F.3d at
1210. The rule recognizes "the importance of expediting disability claims." *Id.* In cases in
which it is evident from the record that benefits should be awarded, remanding for further
proceedings would delay effectuating the primary purpose of the Social Security Act, which is to
give financial assistance to disabled persons because they cannot sustain themselves. *Id.*

It is clear from the record that the ALJ must find the claimant disabled after crediting the
evidence in question, and additional proceedings are unnecessary to determine plaintiff's
entitlement to benefits. The record is fully developed, and further proceedings "would serve no

14 -- OPINION AND ORDER

useful purpose." *See Lester*, 81 F.3d at 834 (if evidence that was improperly rejected demonstrates that claimant is disabled, court should remand for payment of benefits).

Moreover, permitting the Commissioner a further opportunity under these circumstances to amend findings to comport with a denial of disability benefits is not in the interests of justice. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

## CONCLUSION

Based on the foregoing, this court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Under the applicable standards, after giving the evidence in the record the effect required by law, plaintiff is unable to engage in any substantial gainful activity by reason of his impairments, and he is disabled under the Act. Accordingly, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the calculation and award of benefits to plaintiff Noah D. Owens.

IT IS SO ORDERED.

DATED this __*2 7*__ day of July, 2007.

Ancer L. Haggerty
United States District Judge